# BALTIMORE CITY COURT.

Filed March 8, 1922.

MAYOR AND CITY COUNCIL OF BALTIMORE, A MUNICIPAL CORPORATION,

VS.

THE CHESAPEAKE AND POTOMAC TELEPHONE COMPANY OF BALTIMORE CITY, A BODY CORPORATE.

*Allen A. Davis*, Deputy City Solicitor, for plaintiff.

*Shirley Carter* for defendant.

STUMP, J.—

The Chesapeake and Potomac Telephone Company, the defendant, was incorporated in 1884 under the code provisions for telegraph and telephone companies, and was thereby authorized to undertake a business in the success and efficiency of which the public had at that time an interest.

The object, as far as the public concern went, was to get quick communication by wire over long distance, and hence the leave to plant poles in the highways of the State of Maryland to support the necessary wires.

Upon incorporation, the telephone company proceeded to construct its operating plant, and as a part thereof erected the poles in question in this case on said highways, and have ever since maintained the same, and in addition to the authority from the State to erect the poles in question on the highways, the defendant telephone company purchased from the private owners of the reversion or fee of and along said highways, and now possesses the right as far as such private owners are concerned, to use any land of theirs in said highways in the maintenance of said poles in said highways.

The last, meaning the most recent, annexation of land to the area of Baltimore City was under Act of the General Assembly of Maryland passed in 1918. The poles directly involved in this case were at the time and prior to 1918 standing and used under the circumstances above stated in those portions of the highways of Baltimore County and Anne Arundel County now under said Act of Assembly within or a part of the area of Baltimore City.

Subsequent to the erection and during the use of these poles in the defendant company's telephone business, the Mayor and City Council in 1893 passed the Ordinance No. 86, which figures in this case, and the same was in effect when the added area came to the City from the State under the Act of 1918, and said ordinance is still unrepealed.

This suit is brought to recover the amount of two dollars for each of the defendant's said poles admitted to stand now on the highways in this added city area, aggregating 2,636 poles in number. In other words, the poles in question, 2,636 in number, are in fact in the same location, but now embraced within the added area of the city instead of within the areas of Baltimore County and Anne Arundel County. The plaintiff's claim is based upon the ordinance approved the 20th day of April, 1893, known as No. 86.

We shall assume for the purposes of this case that this ordinance by its terms is broad enough to embrace poles erected and in use prior and at the time of its passage, as well as all to be erected subsequently. The ordinance is still unrepealed. It seems to the court that the defendant is entitled to consideration for having, after or upon its incorporation with leave to so locate its poles, made its outlays of capital without having to estimate anything in its expenses for the use of the highways. Leave had been granted without charge in that respect, with the implied condition that the company would make the outlay and furnish the system for the public use.

This principle is set forth in New Orleans vs. Southern Telephone and Telegraph Company case in 40 La. Annual Reports. This court finds that the Supreme Court of the United States recognized the soundness of the principle in the comments of Mr. Justice Brewer in the opinion in St. Louis vs. Western Union Telegraph Co., 148 U. S.

When we come to consider Ordinance No. 86 of the Mayor and City Council of Baltimore the charge of two dollars per pole therein appears to this court, as far as the defendant's poles are concerned, when we hold in view the facts admitted as to the status of defendant's poles at the time of passage of the ordinance, being in substance an annual charge against the defendant for the use of the highway.

This view is taken from the opinion of Mr. Justice Brewer in 148 U. S. in the St. Louis case in connection also with the New Orleans case.

The defendant in this case is admitted to have paid all ordinary State and city taxes, including a gross receipt or State franchise tax of $95,000 for one year (1920), and assessment on poles and wires as real property as the value of its easements in said highways.

It seems properly to be the law, however, that the defendant took its charter and franchise from the State subject to any then existing or future police regulations by the State, county or city. Having done so, it appears to the court that the defendant, as to the highways within the area involved, is subject to the police regulations of the City of Baltimore. The highways are for the use of the public and the city is merely an agency for that public. The general use of the highway by the public is to pass over and into and out of it, but the use of it by the defend-

ant, even when you regard it as a part of the public, is a permanent or unchanging and constant use of certain spots in the thoroughfare of the public. Consequently, if the best interests of the public in the highway required the moving of the poles to another portion of the highway, or the removal of the poles from the highway altogether, the Mayor and City Council of Baltimore could so legislate; or if the public interest in the highway require the poles to be of a certain size, shape or color, the city could so direct under the police power. Further, it may well be as to all poles erected after Ordinance No. 86 was passed, the said ordinance should be held to be a police regulation, and particularly in view of the opinion of the Supreme Court delivered by Mr. Justice Brewer in 190 U. S., in the Atlantic & Pacific Telegraph Co. vs. Philadelphia. In the last case there was no question of any rights in the company under grants prior to the Philadelphia ordinance. This court, in this case, also is of opinion that the Mayor and City Council has the authority to require the defendant, under penalty, if it becomes necessary as a police regulation, to put its name or number, or both, on its poles in the city's highways without reference to the time of the erection of the poles on the highways.

But, it seems to the court, we must bear in mind that as far as the court's observation goes the State and Federal courts have recognized, and never denied, in cases with facts similar to this, the principle of some regard for rights acquired under a charter on certain terms of charge or public consideration, acted upon by the outlay of money. This recognition appears in the minor privilege cases and in others.

Consequently, since this court is of opinion that as far as this defendant is concerned, Ordinance No. 86 is, from the reasoning in the New Orleans case and the expressions of the Supreme Court in the St. Louis case, in substance a charge for the use of the highway, the verdict will be for the defendant.

The court has been gratified with the aid given it by the thorough and able discussions of counsel and with the co-operation of counsel in agreeing upon the facts and thus saving so much of the court's time.